UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                        )
UNITED STATES           )
                        )
          v.            )          No. 11-10260-NMG
                        )
AARON SWARTZ            )
_____)

**MOTION TO SUPPRESS ALL FRUITS OF SEARCHES PURSUANT TO A WARRANT
OF 950 MASSACHUSETTS AVENUE, APT. 320, CAMBRIDGE, MASSACHUSETTS,
AND 124 MOUNT AUBURN STREET, OFFICE 504, CAMBRIDGE, MASSACHUSETTS
AND INCORPORATED MEMORANDUM OF LAW
(MOTION TO SUPPRESS NO. 4)**

Now comes the defendant Aaron Swartz and respectfully moves that this Honorable Court

suppress as evidence at the trial of this case all evidence derived from searches of his home at 950

Massachusetts Avenue, Apt. 320, Cambridge, Massachusetts, and of his office at 124 Mount Auburn

Street, Office 504, Cambridge, Massachusetts.

As reason therefor, defendant states:

1.  He had a reasonable expectation of privacy in his home and in his office.

2. On February 9, 2011, Secret Service S/A Michael Pickett submitted an affidavit in support

of an application for a warrant to search Swartz's home at 950 Massachusetts Avenue, Apt. 320,

Cambridge, Massachusetts. Exhibit 34. A warrant authorizing the search was issued the same day.

Exhibit 35. The search warrant was executed on February 11, 2011.

3.  The affidavit submitted in support of the warrant application failed to establish probable

cause to believe that evidence of the alleged offense would be found in Swartz's home, in violation

of the Fourth Amendment.

4. On February 11, 2011, Secret Service S/A Brett Seidel submitted an affidavit in support

of an application for a warrant to search Swartz's office at 124 Mount Auburn Street, Office 504, Cambridge, Massachusetts, the case-specific averments of which were virtually entirely derived from observations made by law enforcement officers during the search of Swartz's home and statements made by Swartz which were a direct product of that search. Exhibit 36. The warrant was issued and executed the same day. Exhibit 37.

5. The warrant to search Swartz's office was devoid of probable cause to believe that the items sought would be located there. The probable cause averments of the affidavit were derived from the unlawful search of his home; with those portions of the affidavit excised, as they must be, the affidavit failed to establish probable cause for the search. Alternatively, even if the earlier search of his home were found not to have violated the Fourth Amendment, the affidavit did not establish probable cause to search Swartz's office.

6. All fruits of both searches must, accordingly, be suppressed.

**THE DEFENDANT REQUESTS A HEARING ON THE WITHIN MOTION.**

**LOCAL RULE 7.1(A)(2) STATEMENT**

The undersigned counsel has conferred with AUSA Stephen Heymann. The government opposes the suppression remedies sought and will respond to defendant's request for a hearing in its response to the motion.

**MEMORANDUM OF LAW**

## I.    THE SEARCH OF SWARTZ'S HOME.

### A.    Swartz Had A Reasonable Expectation of Privacy in his Home.

"An individual's right to be free from unreasonable searches is implicated when he or she (1) has "manifested a subjective expectation of privacy" in the place searched, which (2) "society

accepts as objectively reasonable." *United States v. Cardona-Sandoval*, 6 F.3d 15, 20 (1st Cir. 1993), *quoting California v. Greenwood*, 486 U.S. 35, 39 (1988). *See, e.g., United States v. Mancini*, 8 F.3d 104, 107 (1st Cir. 1993).The apartment at 950 Massachusetts Avenue, Apt. 320, Cambridge, Massachusetts, was Swartz's home at the time of the search. He had a subjective expectation of privacy in his home, and that expectation is one which society would certainly accept as objectively reasonable.

### B.    The Averments of the Affidavit.

After reciting information based on which S/A Pickett believed that a crime had been committed and that Swartz had committed it, none of which was in any way related to Swartz's home, Exhibit 34 at 3-7, the affidavit had only this to say about Swartz's home:

> 26.  It is probable that Aaron Swartz stores and uses computer equipment, computer hardware, computer software, computer related documentation, data and records, as defined in Attachment B, at 950 Massachusetts Avenue, Apartment 320, Cambridge, Massachusetts, where he lives.
>
> \* \* \* \* \*
>
> 30.  Swartz has provided 950 Massachusetts Avenue, Apartment 320, Cambridge, Massachusetts to the Commonwealth as his home address. It is also the address of record for Demand Progress, Inc., of which he is the registered agent, director, president and treasurer. Demand Progress maintains a website, in which it describes its mission in part to seek progressive policy changes by running online campaigns.

Exhibit 34 at 7 -8.[1] The affidavit also mentioned that neither the "ghost macbook" associated with the JSTOR downloading or the external hard drive which had been observed attached to the ACER laptop on January 4, 2011, had yet been recovered. *Id.* The affidavit further stated that on January 10, 2011, Swartz "broadcast a message via Twitter for Mac." *Id.* Finally, S/A Pickett included a boilerplate recitation of the purposes for which individuals in general use computers, noting that 86%

---

[1] Paragraph 31 of the affidavit goes on to provide a description of the premises.

of all households owned at least one computer. *Id.* at 8.

**C.     The Affidavit Failed to Establish Probable Cause to Believe That the Items Sought Would Be Located At Swartz's Home at the Time of the Search.**

Probable cause exists when "the affidavit upon which a warrant is founded demonstrates in some trustworthy fashion the likelihood that an offense has been committed and that there is sound reason to believe that a particular search will turn up evidence of it." *United States v. Schaefer*, 87 F.3d 562, 565 (1st Cir. 1996), *quoting United States v. Aguirre,* 839 F.2d 854, 857-58 (1st Cir. 1988). "'[M]ere suspicion, rumor, or strong reason to suspect [wrongdoing]' are not sufficient." *United States v. Vigeant,* 176 F.3d 565, 569 (1st Cir. 1999). Instead, the affidavit must provide the issuing judge with a "substantial basis" for concluding that probable cause exists. *See, e.g., United States v. Feliz,* 182 F.3d 82, 86 (1st Cir. 1999); *United States v. Khounsavanh,* 113 F.3d 279, 283 (1st Cir.1997).

While courts often speak of the need to accord deference to the issuing judge's "assessment of the facts and inferences supporting the affidavit," *United States v. Sawyer,* 144 F.3d 191, 193 (1st Cir. 1998), "[d]eference to the [issuing] magistrate . . . is not boundless." *United States v. Leon,* 468 U.S. 897, 914 (1984). *See, e.g., United States v.  Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000)(court will not defer to magistrate if there is not substantial basis for concluding that probable cause existed). Such deference does not, for example, extend to permit the upholding of a warrant based on conclusory allegations by the affiant. *See, e.g., Vigeant,* 176 F.3d at 571; *United States v. Wilhelm,* 80 F.3d 116, 119 (4th Cir.1996). "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Illinois v. Gates,* 462 U.S. 213, 239 (1983). *See also Johnson*

4

*v. United States,* 333 U.S. 10, 14 (1947); *Khounsavanh,* 113 F.3d at 284. Probable cause is a fact-specific inquiry, and it is, in each case, "the duty of a court confronted with the question to determine whether the facts and circumstances of the particular [affidavit in support of a warrant application] justified the issuance of the warrant." *Id.* at 285. *See also United States v. Weaver,* 99 F.3d 1372, 1376-77 (6th Cir.1996).

"A warrant application must demonstrate probable cause to believe that (1) a crime has been committed – the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched – the . . . 'nexus' element." *United States v. Ribeiro*, 397 F.3d 43, 48 (1st Cir. 2005), *quoting United States v. Feliz,* 182 F.3d 82, 86 (1st Cir. 1999). In deciding whether the affidavit demonstrates such the requisite nexus between the items sought and the place to be searched, the judicial officer must determine "whether the totality of circumstances reasonably inferable from the affidavit demonstrates a 'fair probability' that evidence material to the 'commission' of the probable crime will be disclosed at the search premises at about the time the search warrant would issue . . . ." *United States v. Zayas-Diaz,* 95 F.3d 105, 113 (1st Cir. 1996). *See, e.g., Ribeiro*, 397 F.3d at 48-49; *Feliz*, 182 F.3d at 86. Nexus need not rest on any direct observation, but may be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide [evidence of the crime]." *Feliz*, 182 F.3d at 88.

Whether there is probable cause to believe that the suspect has committed a crime and whether there is a nexus between evidence of that crime and the place to be searched are two separate inquiries; probable cause to believe that someone has committed a crime does not *ipso facto* provide probable cause to believe that evidence of that crime will be found in his home or office.

5

"The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). There must be "some type of evidence connecting the criminal activity, not just the suspect, to the place to be searched." *United States v. Kemper*, 375 F.Supp.2d 551, 553 (E.D.Ky. 2005). *See, e.g., United States v. Rosario*, 918 F.Supp. 524, 531 (D.R.I. 1996); *United States v. Rios*, 881 F.Supp. 772, 775 (D.Conn. 1995); *United States v. Stout*, 641 F.Supp. 1074, 1078 (N.D.Cal. 1986).   Any contrary rule "would be an open invitation to vague warrants authorizing virtually automatic searches of any property used by a criminal suspect." *Rosario*, 918 F.Supp. at 531. *See also United States v. Schultz*, 14 F.3d 1093, 1098 (6th Cir.  1994); *Rios*, 881 F.Supp. at 775; *Stout*, 641 F.Supp. at 1078.

S/A Pickett's affidavit completely failed to demonstrate probable cause to believe that the items sought would be found in Swartz's home at the time of the search. The warrant was applied for, and issued, more than a month after Swartz was arrested on January 6, 2011. The alleged offenses at issue were not shown to have had any connection to Swartz's home. The laptops through which the JSTOR downloads were conducted were located on MIT premises and used the MIT network to access JSTOR. Swartz was not observed going from his apartment to MIT or going directly from accessing the laptop and hard drive at MIT to his apartment. Nothing in the affidavit even inferentially connects the items sought with Swartz's apartment. *Compare, e.g., United States v. Laughton*, 409 F.3d 744, 474 (6th Cir. 2005)(ordering evidence suppressed where affidavit failed to make any connection between the residence to be searched and the facts of the criminal activity set forth in the affidavit); *Kemper*, 375 F.Supp.2d at 554 (ordering  evidence suppressed where no

nexus shown between residence and the criminal activity as to which evidence sought), *with, e.g.,* *Ribeiro*, 397 F.3d at 52 (affidavit set forth police observations of defendant leaving residence in close temporal proximity to drug transactions); *United States v. Keene*, 341 F.3d 78, 82 (1st Cir. 2003)(fact that defendant worked from home while recovering from injury suggested that drug distribution was being organized from defendant's home). Even if one indulged in the unwarranted assumption that the twitter message referenced by S/A Pickett was sent from the same macbook used during the JSTOR downloads, the macbook, being readily portable, could have been located anywhere when the message was sent; this information provides no nexus between the macbook and Swartz's apartment. On the critical nexus component of the probable cause calculus, the affidavit provided the Magistrate Judge with little more than S/A Pickett's bare-bones claim that "[i]t is probable" that the items sought would be found at Swartz's home.[2] Such conclusory allegations by the affiant, not even accompanied by standard boilerplate regarding what the affiant's training and experience tell him about where individuals maintain evidence of crimes, does not suffice to establish probable cause.

**D.     The Good Faith Exception Cannot Save the Search of Swartz's Home, and All Fruits of That Search must Be Suppressed.**

The government has the burden to demonstrate the applicability of the good faith exception,

---

[2] While S/A Pickett did add some experiential generalities about what computers can be used for, there is nothing in the affidavit which factually connects those potential uses to the circumstances of this particular case.  Such generalities are entitled to little or no weight, as the affidavit did not provide a sufficient factual basis for the Magistrate Judge to make a neutral, independent determination that the generalities recited by S/A Pickett were likely to be true with respect to the particular search for which authorization was being sought. *See, e.g., Ribeiro*, 397 F.3d at 52 (generalizations alone may not be enough to satisfy the nexus element); *Zimmerman*, 277 F.3d 416, 433 n.3 (3d Cir. 2002)(expert opinion "must be tailored to the specific facts of the case to have any value"); *Schultz*, 14 F.3d at 1097 (officer's training and experience "cannot substitute for the lack of evidentiary nexus").

*see, e.g., United States v. Diehl*, 276 F.3d 32, 42 (1st Cir. 2002), and unless it can meet that burden, the evidence must be suppressed. It will not be able to do so in this case. "Although weakening the exclusionary rule, the [*Leon*] Court did not defenestrate it." *United States v. Ricciardelli,* 998 F.2d 8, 15 (1st Cir. 1993). "Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble." *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996), *aff'd on rehearing*, 91 F.3d 331 (1996). The determination whether the *Leon* good faith exception should be applied in a particular case requires an "inquir[y] into the 'objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Diaz,* 841 F.2d 1, 5 (1st Cir. 1998), *quoting United States v. Leon*, 468 U.S. 897, 922 n.23 (19 84).

The good faith exception does not apply when the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon,* 468 U.S. at 922. Where the defect in the warrant is one of probable cause, the requisite inquiry is "whether a reasonably well-trained officer . . . would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Vigeant,* 176 F.3d at 571, *quoting Malley v. Briggs,* 475 U.S. 335, 345 (1985). Here, a reasonably well-trained officer would have known that the affidavit failed to establish probable cause as to the essential "nexus" element of probable cause. *See, e.g., United States v. Grant*, 682 F.3d 827, 841 (9th Cir. 2012); *United States v. Laughton*, 409 F.3d 744, 749 (6th Cir. 2005); *Zimmerman*, 277 F.3d at 437-38; *Kemper*, 375 F.Supp.2d at 554-55. The Court should, therefore, find the good faith exception inapplicable. Accordingly, all fruits of the search of Swartz's home, including, but not limited to, statements made by him to law enforcement officers during the search.

## II.    THE SEARCH OF SWARTZ'S OFFICE.

### A.    Swartz Had a Reasonable Expectation of Privacy in his Office.

The office which was searched was Swartz's private office at the Safra Center for Ethics at Harvard, where he was a fellow. He did not share it with others, and the door had a lock on it. The computer in the office was password-protected. He had a both a subjective and an objectively reasonable expectation of privacy in his office. *See, e.g., United States v. Ziegler*, 474 F.3d 1184, 1189-90 (9th Cir. 2007); *O'Rourke v. Hayes*, 378 F.3d 1201, 1208  (11th Cir. 2004); *United States v. Mancini*, 8 F.3d 104, 109-10 (1st Cir. 1993).

### B.    The Search of Swartz's Office Was the Derivative Fruit of the Unlawful Search of Swartz's Home.

The probable cause averments of the affidavit are virtually entirely derived from observations made by law enforcement officers at the time of the search of Swartz's home and statements made by Swartz during, and as the direct product of, the search  – that during the search, law enforcement officers observed computer wiring and computer paraphernalia, but no computers, that Swartz said during the search, "what took you so long" and "Why didn't you do this earlier?", that Swartz left the building when the agents did and began running, and that Swartz was thereafter located at his office at 124 Mount Auburn Street, Suite 520N. Exhibit 36, ¶¶6-9.[3] Indeed, the affidavit's nexus recitations rely virtually exclusively on the fruits of the unlawful search of Swartz's home: "Based on Swartz's statements during the search, the fact that computer hardware had clearly been removed from his apartment, his conduct immediately after the search, the remote access capabilities of the

---

[3] In ¶11, the affidavit discusses the results of the port scan of Swartz's laptop, which was itself an unlawful search. *See* Motion to Suppress All Fruits of Warrantless Searches Conducted from January 4, 2011, to January 6, 2011, And Incorporated Memorandum of Law.

Acer laptop installed at MIT in furtherance of the crimes, and on my training and experience, I believe that it is probable that Swartz ran from the apartment after the search to locate, hide and/or destroy evidence, fruits, or instrumentalities at his office." Exhibit 36, ¶14. Absent the information gleaned as the direct result of the unlawful search of Swartz's home, the affidavit does not establish probable cause to believe that evidence of the alleged offense would be found in Swartz's office. All evidence seized pursuant to this warrant, as well as all derivative fruits thereof, must be suppressed.

**C.    Even if the Information Which Was the Product of the Search of Swartz's Home is Considered, the Affidavit Failed to Establish Probable Cause to Search Swartz's Office.**

The information set forth in the affidavit fails to provide probable cause to believe that evidence of the alleged offenses would be found in Swartz's office. *See* pages 4-6, *supra.* Swartz's statements to law enforcement officers during the search of his home, on which the affiant relies, Exhibit 36, ¶¶6, 14, provide no basis for an inference that evidence of the alleged crime was located at Swartz's office, nor do the remote capabilities of the Acer laptop, Exhibit 36, ¶¶11, 14, which had long since been seized by law enforcement. That Swartz had "computer hardware" in his office, Exhibit 36, ¶13, does not establish a connection with the alleged offenses.  It is a rare office indeed in these days that does not contain computer hardware. The only computer hardware associated with the alleged offenses was the Acer laptop and the hard drive seized on January 4, 2011, and a macbook and a Samsung hard drive, and the affidavit provides no reason to believe that either of the latter two would be found in Swartz's office. The only connection shown with Swartz's office is that he was observed to run there after his home was searched. That observation does not provide probable cause to believe that evidence of the alleged offenses would be found in Swartz's office; indeed, that Swartz went to his office immediately following the search of his home, going past the

10

officers who searched his home to do so and with them observing him, would suggest quite the

opposite of his going to his office for the purpose of destroying or removing evidence.

      **D.**      **The Good Faith Exception Cannot Save the Search of Swartz's Office, and All Fruits of That Search must Be Suppressed.**

The good faith exception cannot save the unlawful search of Swartz's office for the same

reasons addressed in Section I(D), *supra*.

<div style="margin-left:40%">

Respectfully submitted,
By his attorney,

**/s/ Martin G. Weinberg**
Martin G. Weinberg
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700 (tel.)
(617) 338-9538 (fax)
owlmgw@att.net

</div>

### CERTIFICATE OF SERVICE

    I, Martin G. Weinberg, hereby certify that on this 5th day of October, 2012, a copy of the foregoing document has been served via the Court's ECF system on all registered participants, including Stephen P. Heymann, AUSA. One copy of the exhibits to this motion was served on the government by hand this same date.

<div style="margin-left:40%">

**/s/ Martin G. Weinberg**

Martin G. Weinberg

</div>