UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 11-10260-NMG |
| | ) | |
| AARON SWARTZ, | ) | |
| | ) | |
| Defendant | ) | |

GOVERNMENT'S RESPONSE TO
MOTION TO DISMISS COUNTS 1 AND 2

Defendant Swartz has moved to dismiss Counts 1 and 2 of the Superseding Indictment, which charge him with committing wire fraud. He argues that a communication between two computers cannot constitute wire fraud; that, as a matter of law, he could not have acted in a materially deceptive way with respect to either MIT or JSTOR; and, finally, that the wire fraud statute would be void for vagueness as applied to his case.

The Court should deny Swartz's motion to dismiss. The Superseding Indictment alleges a scheme to defraud JSTOR of its property through interstate wire communications. The wire fraud statute has been applied for decades in analogous situations. Consequently, Swartz had fair notice that his contemplated conduct was forbidden by the statute and the wire fraud statute is not void for vagueness as applied to his conduct.

I.  THE SUPERSEDING INDICTMENT ADEQUATELY ALLEGES A SCHEME TO DEFRAUD

Swartz's motion to dismiss should be denied because the Superseding Indictment adequately alleges the elements of a wire fraud crime and conduct that is prohibited by that statute. "In the normal course of events, a facially valid indictment returned by a duly constituted grand jury calls for a trial on the merits. An indictment is generally sufficient if it

sketches out the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense." *United States v. George*, 839 F. Supp. 2d 430, 434-35 (D. Mass. 2012) (Gorton, D.J.) (citations and internal quotation marks omitted).  Thus, to prevail on a motion to dismiss, Swartz must show that the conduct charged in the Superseding Indictment is not prohibited by the language of the statute.  *United States v. Pirro*, 212 F.3d 86, 91 (2d Cir. 2000) (affirming dismissal of a tax count that failed to charge a violation of a known legal duty).

The elements of wire fraud are: (1) a scheme to defraud or obtain money or property by means of false or fraudulent pretenses, involving a material misrepresentation; (2) the defendant's knowing and willful participation in the scheme with the intent to defraud; and (3) the use of interstate wire communications in furtherance of the scheme.  *First Cir. Pattern Jury Instr. (Criminal)* 4.13 (1998); *Neder v. United States*, 527 U.S. 1, 25 (1999).  The Superseding Indictment alleges each of these elements explicitly.  Paragraph 35 charges that Swartz "having devised and intended to devise a scheme and artifice to defraud and for obtaining property — journal articles digitized and distributed by JSTOR, and copies of them — by means of material false and fraudulent pretenses and representations, transmitted and caused to be transmitted by means of wire communication in interstate commerce writings, signs, and signals — that is, communications to and from JSTOR's computer servers — for the purpose of executing the scheme, and aiding and abetting it, including on or about" dates specified in that paragraph.  Superseding Indictment ¶ 35.  Categorized by elements of the offense, these allegations thus allege (1) a scheme to defraud or obtain JSTOR's property by means of false or fraudulent pretenses, involving a material misrepresentation; (2) Swartz's knowing and willful participation

in the scheme with the intent to defraud; and (3) the use of interstate wire communications in furtherance of the scheme. *See First Cir. Pattern Jury Instr. (Criminal)* 4.13 (1998); *Neder*, 527 U.S. at 25.

Swartz's wire fraud scheme is fleshed out in other paragraphs of the Superseding Indictment. Paragraphs 34 (a)-(d) identify fraudulent pretenses and misrepresentations through which Swartz obtained JSTOR's journal articles, specifically:

a. Deceptively making it appear to JSTOR that he was affiliated with MIT by downloading JSTOR's articles through MIT's computer network and from MIT IP addresses, even though he was not affiliated at the time with MIT, Superseding Indictment ¶ 34(a);

b. Repeatedly taking steps to change his and his computer's apparent identities and to conceal his and his computer's true identities, Superseding Indictment ¶ 34(b);

c. Using a rapid, automated software tool designed to make it appear as if he were multiple people making single download requests rather than a single person making multiple requests, Superseding Indictment ¶ 34(c); and

d. Attempting to conceal from MIT the physical location of his laptop's connection to MIT's network, by placing it in a wiring closet, covering it with cardboard, and, at one point, moving it from one MIT building to another, Superseding Indictment ¶ 34(d).

A number of paragraphs in the Superseding Indictment demonstrate how those fraudulent pretenses and misrepresentations were material. They explain that by changing his computers' IP addresses, Swartz sought to mislead JSTOR, and misled JSTOR, which could identify and attempt to block the source of the exhaustive download requests it was suffering only by the IP address from which the download requests were coming. Superseding Indictment ¶¶ 17(a)-(c), 19(c), 24, 27(b). By changing his computers' MAC addresses, Swartz similarly sought to mislead MIT, and misled MIT, which could only identify him and block his access to their network by barring the MAC address of his computer from being used during the "guest"

3

registration process.  Superseding Indictment ¶¶ 17(d), 19(b), 27(c).  By using software designed to make it appear as if his computer was multiple computers or people making single download requests rather than a single person making multiple download requests, Swartz sought to deceive JSTOR, and deceived JSTOR, which limited the number of articles that any one person could download.  Superseding Indictment ¶¶ 28, 34(c).  By placing his computer under a cardboard box, Swartz sought to deceive MIT personnel into not noticing or disconnecting the computer.  *See* Superseding Indictment ¶¶ 24, 34(d).  By moving it from one part of MIT's campus to another, Swartz sought to evade detection.  Superseding Indictment ¶¶ 27, 34(d).  Throughout, Swartz did not use his real name when he registered his computer, thus seeking to avoid and avoiding MIT's and JSTOR's attempts to verify his actual identity.  Superseding Indictment ¶¶ 14(a), 19(a), 20, 27(a), 34(b).[1]

The Superseding Indictment's allegations far more than met the pleading standards.

Swartz argues generally that none of these false and fraudulent pretenses or misrepresentations were material, as the wire fraud statute requires.  This is for the jury to decide.  *See United States v. Senibaldi*, 959 F.2d 1131, 1133 (1st Cir. 1992) (holding that on a motion to dismiss an indictment, the court should resolve questions of pleading, not evidence); *United States v. Guerrier*, 669 F.3d 1, 3-4 (1st Cir. 2011) ("And his attempt to sink a facially valid indictment with a motion to dismiss that targets the strength of the government's *evidence* misfires. [¶] What counts in situations like this are the charging paper's *allegations*, which we

---

[1] Swartz argues at the bottom of page 7 and top of page 8 of his motion that misrepresentations made to MIT cannot support a charge of defrauding JSTOR of JSTOR's property. The First Circuit has expressly rejected this "convergence theory." "Nothing in the mail and wire fraud statutes requires that the party deprived of money or property be the same party who is actually deceived." *United States v. Christopher*, 142 F.3d 46, 54 (1st Cir. 1998).

must assume are true.  Consistent with that rule, courts routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations . . . .") (citations omitted).

Swartz more particularly argues that his fraudulent pretenses and misrepresentations were not material because he made them not to a person but to a computer, arguing that a computer is not a "decisionmaker" and therefore a pretense or misrepresentation made to a computer cannot be material.  This argument, too, fails on a number of fronts.  First, the argument rests on Swartz's presumption that the Government lacks evidence that his pretenses and misrepresentations were considered by a human, whereas a motion to dismiss should consider only the indictment's allegations, not the evidence.  *See Guerrier*, 669 F.3d at 3-4*; Senibaldi*, 959 F.2d at 1133.  (In fact, to the extent that it is relevant, the Government anticipates introducing testimony that some of Swartz's pretenses and misrepresentations were reviewed by humans: MIT's and JSTOR's network security personnel.)  Second, Swartz's presumption that none of his pretenses and misrepresentations were considered by a decisionmaker is belied by the Superseding Indictment's allegations that MIT and JSTOR responded to Swartz's pretenses and misrepresentations by blocking his access and downloads or were sometimes misled into failing to block his access and downloads.  Third, whether Swartz's pretenses and misrepresentations went to a computer rather than a person is beside the point.  The gravamen of the wire fraud offense is to "transmit[] or cause[] to be transmitted by means of wire . . . communications . . . writings, signs, signals, pictures, or sounds . . ." 18 U.S.C. § 1343.  Representations transmitted by wire are necessarily transmitted from one electronic device to another electronic device.  This is how telephone calls, electronic mail, and the Internet work.

To suggest that the wire fraud statute excludes communications that are received by an electronic device would be to severely restrict the statute's reach in ways not contemplated by the statute's language or by any court. Fourth, even when Swartz's pretenses and misrepresentations were not reviewed specifically by a person, they were nevertheless considered by MIT and JSTOR for purposes of deciding whether to block or allow Swartz's access and downloads. Those decisions might have been made by computers, but those computers had been programmed by humans to automate MIT's and JSTOR's security decisions. When Swartz misled their computers about his and his computers' identity to access their networks, he made material representations to MIT and JSTOR every bit as much as if he had provided false identification to deceive guards at their doors to access their buildings.[2]

In fact, as Defendant is aware, the wire fraud statute has been repeatedly used to charge defendants for transmitting deceptive communications from one electronic device to another electronic device to trick the victim into providing electronic service. *See, e.g., United States v. Harris*, 2012 WL 2402788 (D. Mass. 2012) (Wolf, C.J.) (denying motion to dismiss or for acquittal of wire fraud conviction for selling cable modem hacking software that would allow users to obtain free Internet service by mimicking identities, including MAC addresses, used by Internet service providers to identify legitimate subscribers); *United States v. Manzer*, 69 F.3d 222 (8th Cir. 1995) (upholding mail and wire fraud convictions against defendant who modified satellite broadcast decryption devices to allow customers to watch premium television channels such as HBO for free) (discussed in *Harris*, *supra*); *United States v. Coyle*, 943 F.2d 424 (4th

---

[2] In an analogous context, tax fraud is no less tax fraud just because the IRS has recently computerized its tax return submission and review process.

Cir. 1991) (mail fraud conviction for defendant who built and sold cable and television descramblers to allow nonsubscribers free cable service); *United States v. Gautreaux*, 382 F.2d 607, 610 (10th Cir. 1967) (upholding wire fraud conviction for scheme to defraud telephone company of revenue for use of long distance services; declaring that financial loss to telephone company or gain to defendants was unnecessary); *United States v. Patterson*, 528 F.2d 1037 (5th Cir. 1976) (holding that since defendant knew "blue boxes" were intended to defraud telephone company of revenue from long distance calls, he could not successfully argue that he had not received fair notice that wire fraud statute applied); *United States v. DeLeeuw*, 368 F. Supp. 426 (E.D. Wisc. 1974) (upholding application of wire fraud statute to schemes to obtain free telephone service).[3]

Not all theft is, of course, mail or wire fraud. But when the conduct involves repeated deception and deceit, as Swartz's conduct did, the wire fraud statute encompasses the crime. *U.S. v. Coyle*, 943 F.3d at 427 (distinguishing fraud, which is characterized "trick, deceit, chicane and overreaching" and by "dishonest methods or schemes," from deprivation of property by such crimes as "theft by violence.. robbery and burglary") (citations omitted).  The Superseding Indictment properly alleges a wire fraud and therefore should not be dismissed.

---

[3] With the exception of *Harris,* these cases were decided before *Neder*, in which the Supreme Court made clear that a material misstatement was a necessary element of a wire fraud charge. They are cited here only to show that numerous district and appellate courts have upheld the application of the wire fraud statute in similar contexts.

## II. THE COMPUTER FRAUD STATUTE DID NOT PREEMPT OR REPEAL THE WIRE FRAUD STATUTE'S APPLICATION TO COMPUTER-TO-COMPUTER WIRE COMMUNICATIONS

Swartz suggests, without citation either to legislative history or caselaw, that when Congress enacted the Computer Fraud and Abuse Act provisions in 18 U.S.C. § 1030(a)(2) (obtaining information from a computer) and (a)(4) (using a computer to defraud), Congress expressed its belief that criminal conduct such as Swartz's was not covered by the wire fraud statute.

Neither the Computer Fraud and Abuse Act nor the wire fraud statute expressly preempts the other. That leaves Swartz to argue that the Computer Fraud and Abuse Act repealed or preempted the wire fraud statute by implication.

This contradicts the normal rules of statutory interpretation. By making this argument, Swartz ignores First Circuit precedent discouraging the interpretation of one criminal statute to preclude charging a defendant under another criminal statute:

> Assuming, arguendo, that appellants' acts violated both 7 U.S.C. § 60 and 18 U.S.C. § 1341 or 1343, we find no basis that the former either preempted or impliedly repealed the latter. . . . .
>
> Moreover, in urging a finding of implied repeal, appellants march into the teeth of a strong judicial policy disfavoring the implied repeal of statutes. For a court to find implied repeal, there must be a positive repugnancy between the two statutes. Where two statutes cover the same subject, effect will be given to both, if possible. Partial repeals will not be implied because they do not satisfy the requirement that the intent of the legislative body be clear and unequivocal. It is also generally held that for a later-enacted statute to impliedly repeal an earlier one, the later statute must cover the entire field occupied by the earlier one. . . .
>
> Although the [commodities fraud and mail and wire fraud] statutes prohibit similar conduct, they operate independently and harmoniously. The government's election to prosecute appellants

> under the statute which, at the time, provided the more severe penalty, was an exercise of discretion that violated no rights of appellants.

*United States v. Brien*, 617 F.2d 299, 310-11 (1st Cir. 1980) (citations and footnote omitted). Consequently, the First Circuit held that the anti-fraud provisions of the Commodities Futures Trading Act did not impliedly preempt the wire fraud statute's coverage of the same criminal conduct. *Id.*

Swartz's argument for the Computer Fraud and Abuse Act's implied repeal or preclusion of the wire fraud statute is similarly doomed. Under *Brien*, there is "a strong judicial policy disfavoring the implied repeal of statutes," such that "[w]here two statutes cover the same subject, effect will be given to both, if possible." *Id.* at 310. Since the Computer Fraud and Abuse Act and the wire fraud statute cover the same subject, "effect will be given to both, if possible." *Id.* Moreover, "for a later-enacted statute" like the Computer Fraud and Abuse Act "to impliedly repeal an earlier one, the later statute must cover the entire field occupied by the earlier one," *id.*, yet the Computer Fraud and Abuse Act does not cover every type of wire communication covered by the wire fraud statute. Furthermore, "[a]lthough the [Computer Fraud and Abuse Act and the wire fraud] statutes prohibit similar conduct, they operate independently and harmoniously." *Id.*

In fact, numerous cases have held that a defendant's criminal conduct could be prosecuted under the wire or mail fraud statute and a more specific criminal statute. *See, e.g., United States v. Coyle*, 943 F.2d 424, 427 (4th Cir. 1991) (holding that defendant who built and sold cable and television descramblers to allow nonsubscribers free cable service could be charged with either mail fraud or statute specific to cable communications, stating that "[i]t is of

no consequence that [the defendant] could have been prosecuted under § 553. The possibility of such a prosecution does not preclude the United States Attorney from electing to charge violation of the mail fraud statute."); *United States v. Faulhaber*, 929 F.2d 16, 19 (1st Cir.1991) (upholding application of § 1341 and securities fraud statute to the same conduct); *United States v. Brien*, 617 F. 2d 299, 309-10 (1st Cir. 1980) (§ 1341 and anti-fraud provisions of Commodities Futures Trading Act).

More specifically, the Eleventh Circuit has recognized that 18 U.S.C. §§ 1030(a)(2), (a)(4) and 1343 can be charged together against the same fraudulent conduct. *Cf. United States v. Barrington*, 643 F.3d 1178, 1191 (11th Cir. 2011) ("We have no hesitation in concluding that the Government's theory rested on a legally cognizable theory of conspiracy to defraud by wire and computer, through which the conspirators deprived [the victim] of its property interest").

Consequently, Swartz has no grounds to claim that the wire fraud statute does not cover computer-to-computer communications.

## III. THE WIRE FRAUD STATUTE IS NOT VOID FOR VAGUENESS AS APPLIED TO SWARTZ

Swartz finally argues that the wire fraud statute as applied to his conduct would be void for vagueness. He had, he says, no warning that his conduct was wrongful.

As a factual matter, this argument is incredible. Swartz took great pains to hide his identity, to hide his laptop and its identifiers, and to hide his face by a bicycle helmet when he believed he could be seen leaving and entering the closet. *See* Superseding Indictment ¶¶ 17, 19, 20, 24, 26, 27, 28, 34. These allegations demonstrate Swartz's consciousness of guilt, not blithe ignorance of criminality.

Moreover, the wire fraud statute has been used numerous times to charge analogous

behavior.  In each instance, as in the present case, the wire fraud statute was applied where:

>   (1)  no actual or potential human "decisionmaker" heard or would hear the misrepresentation directly;
>
>   (2)  the misrepresentation was an electronic one, a claim to a right for services and a deceptive act to avoid paying for them; and
>
>   (3)  the deceived company was not deprived of their only copy of something, but rather a service of value for which they charged customers and received payment.

For example, early on, when long-distance telephone service was costly, the wire fraud statute was properly used to convict individuals who sought to defraud the telephone company by using electronic black boxes to deceive their billing computers.  *See, e.g., United States v. Gautreaux*, *supra*; *United States v. Patterson*, *supra*; *United States v. DeLeeuw*, *supra*.  And years later, after technology changed, the wire fraud statute was properly used to convict individuals who used electronic devices to obtain free cable service.  *See, e.g., United States v. Manzer*, 69 F.3d 222 (8th Cir. 1995) (mail and wire fraud convictions); *United States v. Coyle*, *supra (*mail fraud conviction).

   For these reasons, Chief Judge Wolf recently rejected a void-for-vagueness challenge to the wire fraud in a similar case that involved using hardware and software to obtain free Internet service.  *United States v. Harris*, *supra*.  In *Harris*, the defendant was charged with conspiracy to commit wire fraud and aiding and abetting wire fraud, all for working with a company that developed and sold products to hack cable modems to obtain Internet service without paying for it.  2012 WL 2402788 at *1.  Harris's conduct shared some similarities with Swartz's, as Harris's products helped to hack MAC addresses.  *Id.*  Harris challenged his conviction on the ground that the wire fraud statute was void for vagueness as applied to his conduct.

11

Chief Judge Wolf made short work of the challenge. "'[T]he Due Process clause of the Fifth Amendment requires that a criminal statute be found unconstitutionally vague if it fails to give a person of ordinary intellgence fair notice that his contemplated conduct is forbidden by the statute.'" *Id.* at *2 (quoting *United States v. Maquardo*, 149 F.3d 36, 41 (1st Cir. 1998)) (alterations omitted). In *Harris*, the "case represent[ed] a straightforward application of the wire fraud statute," *id.* at *4, because the wire fraud statute's scope is broad, the statute "covers deceptive schemes to deprive victims of a wide variety of tangible and intangible property interests," *id.* (internal quotation marks and citation omitted), and "[t]he plain language of the statute put the defendant on notice that he could be subjected to criminal punishment for devising a scheme to defraud internet service providers, or to obtain money or property from internet service providers by means of false or fraudulent representations, if the scheme involved interstate wire transmissions," *id.* Chief Judge Wolf then noted that the wire fraud statute had been used numerous times to prosecute similar defendants, such as those who had obtained television or long-distance telephone service without paying for it. *See id.* (citing *Manzer* and other cases).

The same analysis applies to Swartz. As with *Harris*, Swartz's scheme involved using computer hardware and software, falsifying MAC addresses, and using computer-to-computer communications to obtain service and property without paying for it.[4] The wire fraud statute still

---

[4] Swartz claims that nothing he did deprived MIT or JSTOR of revenue, because he could have used MIT's and JSTOR's networks for free. Again, Swartz is not allowed to argue evidence on a motion to dismiss. And his claims contradict the Superseding Indictment's allegations that MIT offered guests only fourteen days of network use a year, Superseding Indictment ¶ 7, that MIT and JSTOR had blocked his communications repeatedly, *see generally id.*, that Swartz had circumvented JSTOR's limitations on the number of downloads it permitted, *id.* ¶ 34(c), and that if Swartz had wanted to access JSTOR for legitimate purposes, he could

covers a broad variety of deceptive schemes to deprive victims of a wide variety of tangible and intangible property interests, and the statute's plain language and prior cases still put him on notice that he could be subjected to criminal punishment for devising a scheme to defraud Internet companies by means of false or fraudulent representations, if the scheme involved interstate wire transmissions.  That is what the grand jury charged here.

Moreover, if Swartz is convicted, the trial jury will necessarily have found that he acted deliberately and with intent to defraud, which will further contradict his claim that he did not know that his conduct was wrongful.  *See id.* at *5 (noting that finding of deliberate acts with intent to defraud contradicts claim that statute is void for vagueness).

## IV.   CONCLUSION

For these reasons, Swartz's Motion to Dismiss Counts 1 and 2 of the Indictment is without merit and should be denied.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:   */s/ Stephen P. Heymann*
      STEPHEN P. HEYMANN
      SCOTT L. GARLAND
      Assistant U.S. Attorneys

---

have done so through his JSTOR access at Harvard University's Safra Center for Ethics rather than at MIT, *id.* ¶ 9.  On pre-trial motion to dismiss, the Court must accept the indictment's factual allegations as true.  *See United States v. Ferris*, 807 F.2d 269, 271 (1st Cir. 1986).

CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                    */s/ Stephen P. Heymann*
                                    STEPHEN P. HEYMANN
                                    Assistant United States Attorney

Date:   November 16, 2012