UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA  ) | |
| ) | |
| v.  ) | Criminal No. 11-10260-NMG |
| ) | |
| AARON SWARTZ,  ) | Leave to File Granted 1-11-13 |
| ) | |
| Defendant  ) | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF HIS MOTION TO SUPPRESS No. 5

The e-mail that Defendant Swartz's supplemental memorandum cites as paramount to his fifth motion to suppress is relevant, but not nearly as important as he tries to make it out to be. In that January 7, 2011 e-mail, Secret Service Special Agent Pickett said that he was prepared to take custody of the equipment at issue — a laptop, an attached hard drive and a USB storage device — after it was processed for fingerprints or anytime thereafter.

First, Swartz claims that this contradicts the Government's representation that "Nor did the Secret Service possess this equipment before obtaining the warrants [in February]; the Cambridge Police Department did." Government counsel did, indeed, have this chronology slightly wrong. The equipment was held in evidence by the MIT Police (rather than Cambridge Police) from its recovery on January 6th until February 3rd, when it was picked up and transported by SA Pickett and Det. Joseph Murphy to the Cambridge Police (Ex. 1); the laptop and hard drive were fingerprinted by the Cambridge Police on February 10th (Ex. 2); and the Secret Service executed warrants on the Cambridge Police Department taking custody of the evidence on February 25th.

Second, whether the Secret Service could have taken custody of the equipment on the date of Agent Pickett's e-mail or even the day before when the evidence was recovered has never

been in issue. Of course the Secret Service could have. They obtained custody with the warrants and the warrants may not even have been necessary for the transfer of custody. The point is simply that the equipment was seized and held initially as evidence in a state case in which the Defendant had been charged with breaking and entering on MIT Property with intent to commit a felony. Federal law enforcement could, and did, rely in good faith on the fact that the equipment was being lawfully held as evidence in that state case while their own investigation proceeded.

Finally, and most importantly, there are four reasons, not one, that the interval between seizure of the equipment and obtaining a warrant was wholly proper. The e-mail is relevant only to a tertiary reason. The interval was wholly proper because:

(1) Swartz's possessory interest in the equipment terminated when the equipment was properly seized as *physical* evidence that linked Swartz to his illegal downloads even without a search of its electronic contents. Just as a robbery defendant loses possessory interests in distinctive clothing left at the scene of the crime, so does a computer hacking defendant lose possessory interests in computer equipment left at the scene of the crime and taken from him incident to his arrest. Business records showed the laptop to have been purchased by Swartz and his thumbprint was found on the hard drive, justifying their seizure and retention pending trial even without an electronic search. (The e-mail is irrelevant on this point.)

(2) Swartz's possessory interest in the equipment was highly attenuated even before the equipment's seizure — he left the laptop and attached hard drives unattended on MIT property for days on end while committing his thefts remotely. And, after he was caught, Swartz never sought return of the equipment or even copies of its contents until after he was charged in state and federal proceedings. (The e-mail is irrelevant on this point.)

(3) Secret Service had no obligation to take custody of the equipment at any particular time from the Cambridge Police Department, which was holding it as evidence in Middlesex County's subsequently-indicted state case. (The e-mail is relevant to the Secret Service's uncontested opportunity to obtain custody when appropriate.)

      (4)      The interval was not unreasonable in light of the facts of the investigation. (The e-mail is irrelevant on this point as well.)

The e-mail was not disclosed to Swartz late. The Government had first produced reports and e-mails relevant to the seizure of evidence and his arrest half a year before his suppression motions were due, and in both paper and electronic formats. Although this went well beyond the Government's obligations under *Brady* and the Local Rules, the Government wanted Swartz to readily explore grounds for arguing suppression and argue them fully, as he unquestionably did.

After preparing the Government's briefs and reading Swartz's reply, the Government reviewed the materials that had not been produced earlier again to ensure that they did not contain anything newly relevant and to continue the Government's practice of early disclosure. Two days after the Government saw the e-mail during its second thorough review of potential discovery materials, the Government hand-delivered it to Swartz's counsel in order to ensure counsel would have it well before the merits of his motion were argued or considered.

                           Respectfully submitted,

                           Carmen M. Ortiz
                           United States Attorney

              By:    */s/ Stephen P. Heymann*
                    STEPHEN P. HEYMANN
                    SCOTT L. GARLAND
                    Assistant U.S. Attorneys

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                           */s/ Stephen P. Heymannn*
                           STEPHEN P. HEYMANN
                           Assistant United States Attorney

Date: January 11, 2013