UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>v.<br><br>AARON SWARTZ,<br><br>                    Defendant. | Crim. No. 11-CR-10260-NMG |

**DEFENDANT'S MOTION TO MODIFY PROTECTIVE ORDER**

Now comes the estate of defendant Aaron Swartz and respectfully moves that this Honorable Court modify the Protective Order in this case, Dkt. 28, to allow disclosure of the discovery materials to Congress and to the public, subject to narrow limitations and redactions. Defendant's estate further requests that the Court order that the names and official titles of all law enforcement personnel and MIT and JSTOR employees that appear in the discovery materials remain unredacted in the disclosed discovery materials. As reason therefor, defendant's estate states that the public interest in access to these materials in an intelligible form outweighs the limited privacy interest in the names and official titles of the individuals named therein.

**MEMORANDUM OF LAW**

**I.      INTRODUCTION**

The Government's prosecution of Aaron Swartz has taken on a significance far beyond what the parties could have imagined at the time the Court entered a protective order, over Mr. Swartz's objection, more than a year ago. Among other developments, Congress has commenced an investigation of the prosecution and, in connection with that investigation, requested production of documents relating to the case. Various media organizations have done the same. Accordingly, defense counsel, on behalf of Mr. Swartz's estate, hereby move the

1

Court to modify the Protective Order to allow disclosure to Congress and the general public of the discovery materials provided by the Government to the defense, subject to certain limitations and redactions discussed below.

## II.   FACTUAL BACKGROUND

On November 30, 2011, Magistrate Judge Dein entered a blanket Protective Order in this case, Dkt. 28, generally barring defense disclosure of any documents, files, or records discoverable under Fed. R. Crim. P. 16 and Local Rule 116.1-116.2 to anyone other than the defense team or potential defense witnesses.  *See* Dkt. 28 at 4-5.  Mr. Swartz had opposed entry of the Protective Order for many of the same reasons now at issue on this motion.  *See* Dkt. 21.

Of course, since the Protective Order was entered, circumstances have radically changed.  Tragically, on January 11, 2013, Mr. Swartz committed suicide.  In the weeks since Mr. Swartz's death,[1] his case has become a matter of substantial public interest.  There has been a great deal of national and international press coverage regarding the details of the investigation and prosecution, as well as the fairness of the underlying statutory scheme under which Mr. Swartz was charged.[2]  The Los Angeles Times, among other media organizations, has filed a Freedom of Information Act request for the United States Secret Service's file on the investigation; that

---

[1] In light of Mr. Swartz's death, the undersigned counsel now represents Mr. Swartz's estate in seeking the relief requested by this Motion.  Counsel are also filing concurrently with this Motion the Declaration of Alec Resnick, the executor of Mr. Swartz's estate, who confirms that counsel are filing this Motion on the estate's behalf.

[2] *See, e.g.*, Glenn Greenwald, *The inspiring heroism of Aaron Swartz*, The Guardian (Jan. 12, 2013, 4:25 PM), http://www.guardian.co.uk/commentisfree/2013/jan/12/aaron-swartz-heroism-suicide1; John Naughton, *Aaron Swartz: cannon fodder in the war against internet freedom*, The Observer, Jan. 19, 2013, *available at* http://www.guardian.co.uk/technology/2013/jan/20/aaron-swartz-cannon-fodder-internet-freedom; Justin Peters, *The Idealist*, Slate (Feb. 7, 2013, 9:47 PM), http://www.slate.com/articles/technology/technology/2013/02/aaron_swartz_he_wanted_to_save_the_world_why_couldn_t_he_save_himself.html; Wesley Yang, *The Life and Afterlife of Aaron Swartz*, N.Y. Magazine, Feb. 8, 2013, *available at* http://nymag.com/news/features/aaron-swartz-2013-2/; Quinn Norton, *Life Inside the Aaron Swartz Investigation*, The Atlantic (Mar. 3, 2013, 9:24 PM), http://www.theatlantic.com/technology/archive/2013/03/life-inside-the-aaron-swartz-investigation/273654/?single_page=true; Larissa MacFarquhar, *Requiem for a Dream*, The New Yorker, March 11, 2013, available at http://www.newyorker.com/reporting/2013/03/11/130311fa_fact_macfarquhar.

request was denied on February 21, 2013.  *See* Matt Pearce, *Aaron Swartz is gone, but his story refuses to go away.  Why?*, L.A. Times (Mar. 6, 2013, 8:00 AM) (available for review at http://www.latimes.com/news/nation/nationnow/la-na-nn-aaron-swartz-suicide-20130305,0,6187992.story?page=1).

Later in January 2013, following Mr. Swartz's death, the U.S. House of Representatives Committee on Oversight and Government Reform ("the House Committee") began an investigation into the circumstances surrounding the investigation and prosecution of Mr. Swartz and the proper scope of the statute under which Mr. Swartz had been charged, the Computer Fraud and Abuse Act ("CFAA").  *See* Declaration of Michael Pineault in Support of Motion to Modify Protective Order ("Pineault Decl.") Ex. A (House Committee letter to defense counsel).  On January 28, 2013, Committee Chairman Darrell Issa and Ranking Member Elijah Cummings sent a letter to Attorney General Eric Holder, requesting a briefing from Department of Justice officials about Mr. Swartz's case.  *See* Letter from House Committee to Eric Holder (Jan. 28, 2013), *available at* http://oversight.house.gov/wp-content/uploads/2013/01/2013-01-28-DEI-EEC-to-Holder-re-Aaron-Schwartz-prosecution.pdf.  The letter specifically requested further information on the factors influencing the Government's decisions to prosecute Mr. Swartz and regarding plea offers made to Mr. Swartz.  *See id.*

On February 4, 2013, undersigned counsel received a letter from the House Committee, requesting copies of the discovery provided by the Government to Mr. Swartz, in order to assist the House Committee's investigation of Mr. Swartz's prosecution.  *See* Pineault Decl. Ex. A.  In late February, Steven Reich, an associate deputy attorney general, officially briefed the House Committee regarding Mr. Swartz's prosecution.  *See* Ryan J. Reilly, *Aaron Swartz Prosecutors Weighed "Guerilla" Manifesto, Justice Official Tells Congressional Committee*, The Huffington Post (Feb. 22, 2013, 1:28 PM), http://www.huffingtonpost.com/2013/02/22/aaron-swartz-prosecutors_n_2735675.html.

The circumstances surrounding the investigation and prosecution of Mr. Swartz, and the extent to which certain acts can or should be prosecuted as federal computer-crime felonies, are

plainly of serious public interest. As the Congressional investigation into the prosecution shows, the public has a real stake in information about the manner in which the investigation and prosecution were conducted and the factual predicate for the charges that ultimately were filed. In addition, the public has a substantial interest in assessing the propriety and scope of the criminal prohibitions laid out in the CFAA. Both Congress and the public at large have an important role to play in determining what conduct is considered criminal, particularly in the relatively new and rapidly evolving context of so-called "computer crimes."

Given the House Committee's request for discovery documents and the continuing public interest in and issues implicated by Mr. Swartz's case, defense counsel has engaged in extensive meet and confer discussions with the United States Attorney's office in Boston regarding potential modifications to the Protective Order. Pineault Decl. ¶ 4. The parties have reached agreement on several issues relating to the Protective Order. Specifically, with the exception of grand jury transcripts, immunity orders, criminal history information, the downloaded JSTOR articles, and associated computer code, the Government has expressed its willingness to assent to modification of the Protective Order to permit production of the discovery materials to Congress and the public, subject to certain redactions. *Id.* ¶¶ 5-7.[3] Those include redaction of the email prefixes, telephone numbers, home addresses, conference call numbers, Social Security numbers, and birthdates of individuals named in the discovery materials. *Id.* ¶ 6. Defense counsel agrees that redaction of this specific personal information is appropriate. Further, the Government also seeks the redaction of the names of four private individuals who were questioned during the investigation, including an MIT student. *Id*. ¶ 6(c). Since these four individuals are private citizens who were not actively involved in either the Government's or any institution's

---

[3] The Government has indicated that it reserves the right to reassess its position on release of the discovery materials to the public. Pineault Decl. ¶ 7. Should the Government's position change, or should MIT or JSTOR indicate in response to this Motion that they oppose release of the documents to members of the public, defense counsel will seek leave of Court to address those new arguments in a reply brief, in order set forth in greater detail the ample case authority favoring broad public disclosure.

investigation into Mr. Swartz's conduct, defense counsel does not object to the Government's request to redact those individuals' names.[4]

But the parties disagree about the scope of other redactions. With the exception of two prosecutors, three agents/officers and one expert, the Government is seeking the redaction of the names of all other law enforcement personnel involved in the investigation of Mr. Swartz's case. *Id.* ¶ 6. The Government additionally seeks redaction of all identifying information regarding current or former MIT and JSTOR personnel, including not only names, but also job titles or other information that might allow a reader to ascertain someone's identity, absent express consent allowing non-redaction from those individuals. *Id.* ¶ 6(c). The Government's primary rationale is that revealing the names of any of these individuals, even to Congress, might lead to some form of retaliation.

### III.     ARGUMENT

Criminal proceedings in our nation's courts are presumptively public. *See, e.g.*, *Globe Newspaper Co. v. Super. Ct. of Norfolk Cnty.*, 457 U.S. 596, 604 (1982). Accordingly, Federal Rule of Criminal Procedure 16(d) requires good cause to enter a protective order, even where the parties agreed to that order's terms. *United States v. Bulger*, 283 F.R.D. 46, 52 (D. Mass. 2012). This Court has discretion to modify the Protective Order under Rule 16(d) and its inherent power to control the discovery process. *Id*. at 53. The Court must consider a number of factors in determining whether good cause to maintain the protective order exists, including any changed circumstances, the reliance interest of the Government, and the privacy interests of third parties. *Id*. at 53-55; *see also United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007) ("The good cause determination must also balance the public's interest in the information against the injuries that disclosure would cause."). The party seeking to prevent disclosure bears the burden of demonstrating good cause. *Id*. at 212; see also *Bulger*, 283 F.R.D. at 58 (requiring the

---

[4] Defense counsel also agrees with the Government's position regarding grand jury transcripts, immunity orders, criminal history information, downloaded JSTOR articles, and associated computer code, Pineault Decl. ¶ 5, and is not seeking disclosure of any such materials.

Government to make "an adequate showing that all of the documents the government produced . . . should remain subject to the terms of the protective order").

As described above, the circumstances in this case have changed dramatically. Perhaps most obviously, with Mr. Swartz's death, there is no longer a case to prosecute and thus no danger that disclosure will impede a fair trial. Mr. Swartz's tragic death has also led to an increase in public interest in both the details of the investigation and prosecution and the reasonableness of prosecutions under the CFAA generally. In its discussions with Mr. Swartz's counsel about modifying the Protective Order, the Government has not, to date, asserted any reliance interest based on the Protective Order. Even if it were to assert such an interest, any Government reliance on the Protective Order's terms is tempered by the fact that it is a blanket order and therefore inherently overinclusive. As this District explained in *Bulger,* modification of such a blanket order is not unusual. *Id.* at 54. As a result, the only interest left to be balanced against the significant public interest in access to unredacted documents is the alleged privacy interest of the government employees and third party individuals named in the discovery materials. For the reasons discussed below, those interests are minimal and are overcome by the public interest in the disclosure of these documents.

In its current form, the Protective Order hinders the public's access to vital information about Mr. Swartz's case without any substantial justification. As noted above, the parties are in broad agreement that the Protective Order should be modified to allow disclosure of the Rule 16 documents in some form.[5] Accordingly, the Court must resolve only one narrow question: to what extent the discovery materials should be redacted. Defense counsel respectfully submits that, in order for the disclosure to be meaningful and of use to Congress or any other audience, names and official positions identified in the documents should not be redacted, especially given the minimal privacy interest in that basic information.[6]

---

[5] To reiterate, this motion does not seek production of any of the materials downloaded from the JSTOR system or transcripts of any testimony given to the grand jury. *See* note 2, *infra*.

[6] In the parties' meet-and-confer discussions, the government indicated that it does not speak for

6

732688.03

Defense counsel agrees that truly personal information—such as social security numbers, email prefixes (though not domains), and phone numbers—should properly be redacted from the Rule 16 discovery materials prior to disclosure. But the Government seeks much more than the redaction of genuinely private details—it seeks the blanket redaction of the names and job titles of *all* of the private individuals and even some of the law enforcement personnel involved in investigating Mr. Swartz's activities at MIT in 2010 and 2011. This broad redaction is inappropriate for a number of reasons.

*First*, overbroad redactions of all identifying information would render the documents at issue materially less intelligible and thus far less useful to Congress or whoever else might review them. The central and stated goal of the Congressional inquiry into Mr. Swartz's case is to understand how the investigation and prosecution of Mr. Swartz proceeded, including how the evidence against Mr. Swartz was gathered and then presented to this Court. Most of the contested Rule 16 documents are emails and, in order to understand those emails and their importance to the prosecution, one must know who is speaking and his or her employer and role with that entity. For example, the same email might have a different meaning depending on whether it is identified as being from the General Counsel of MIT as opposed to a junior level employee. Likewise, an email explaining the workings of an entity's computer network would be significantly more meaningful if it came from a director of network security with technical knowledge, as opposed to a police officer or other layperson.

*Second*, the email chains at issue were produced in unredacted form by MIT and JSTOR to the Government without any reasonable expectation that they would not be disclosed in the future. First, at the time MIT and JSTOR decided to cooperate with the Government and produce their documents, no protective order had been requested, much less entered.[7] So MIT

---

MIT or JSTOR. Defense counsel accordingly has agreed to serve MIT and JSTOR with this motion, to permit those parties an opportunity to seek leave to intervene and be heard.

[7] The Government did not move for a protective order until September 27, 2011. Dkt. 18. As a result, it is not clear whether the documents produced by the Government on August 12, 2011, are subject to the Protective Order's prohibitions. The language of the Protective Order is not

7

and JSTOR could not have relied on the Protective Order at the time they provided their documents.  Second, MIT and JSTOR produced to the Government with the understanding that the documents would be used by the Government and the defense in a ***public*** trial.  Many, if not all, of the individuals named in the documents were potential trial witnesses.  Not only would the unredacted documents have been made public if the case had gone to trial, the individuals would have been called to testify in open court about the contents of those communications.  Consequently, MIT and JSTOR cannot now claim any reliance interest on behalf of their employees in the continued privacy of their emails at the time they produced the emails at issue to the Government.

***Third***, most of the names and titles that the Government seeks to redact are ***already*** publicly known.  The motions filed in this case are available to the public via PACER.  MIT's student newspaper, The Tech, has posted Mr. Swartz's second motion to suppress (Dkt. 60) online in PDF form.  *See* http://tech.mit.edu/V132/N46/swartz/swartz-suppress2.pdf.  That motion quoted extensively from the emails at issue, without objection from the Government, MIT, or JSTOR.  The motion names MIT employees Dave Newman, Paul Acosta, Ellen Duranceau, Ann Wolpert, Mike Halsall, and Mark Sillis and JSTOR employee Brian Larsen, identifies their positions, and quotes their email communications.  The Government's (and MIT's and JSTOR's) professed concerns about the privacy of these individuals seem misplaced, when the individuals have already been widely identified in court documents and in press reports covering Mr. Swartz's case.  *See, e.g.*, Noam Cohen, *How M.I.T. Ensnared a Hacker, Bucking a Freewheeling Culture*, N.Y. Times, Jan. 20, 2013, *available at* http://www.nytimes.com/2013/01/21/technology/how-mit-ensnared-a-hacker-bucking-a-freewheeling-culture.html?pagewanted=all&_r=0 (quoting Mike Halsall and Ann Wolpert from

---

explicit as to whether it covers only future discovery materials or whether it also encompasses discovery that took place before the Order's entry.  In an abundance of caution, Mr. Swartz and his defense team have always treated the August 12, 2011 production as though it were subject to the later-entered Protective Order.

"internal M.I.T. documents"). Redaction of these individuals' names would merely add a layer of confusion and opacity to the documents without any additional privacy benefit.

*Fourth*, although it has briefly mentioned some e-mails directed to the U.S. Attorney, the Government has not presented any specific evidence of threats to MIT and JSTOR personnel, regardless of their roles in the investigation, that would warrant the sweeping redaction of *all* MIT and JSTOR names. For example, the Government has not provided defense counsel with a narrow list of MIT or JSTOR personnel whose identities or roles in the investigation were such that special protection is warranted. In addition, despite the fact that the names of many involved individuals have been public for months, the Government has not pointed to any specific instances of threats of retaliation against any of them. In order to find good cause for continuation of a protective order, there must be a particularized, specific showing of harm. *See Anderson v. Cryovac*, 805 F.2d 1, 7 (1st Cir. 1986) ("A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements."); *Wecht*, 484 F.3d at 211 (observing that good cause is established "on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure") (citation and internal quotation marks omitted). The Government's broad-brush invocation of a potential "threat" to the individuals named in the email exchanges is not specific or credible enough to justify redaction of these individuals' names.

*Finally*, all of the above justifications apply with even greater force to law enforcement personnel, who were directly involved in the investigation of Mr. Swartz's case in their official capacities as public employees. The Government has offered no justification for disclosing the names of some law enforcement personnel in the discovery materials but not others. Any such distinction makes little sense, because all of these individuals are identically situated as publicly employed investigative officers and potential witnesses at a public trial of Mr. Swartz.

\*\*\*\*\*

Because the public interest in meaningful disclosure of the discovery materials is great, and no privacy interests will be significantly compromised, if at all, by disclosure, the Court

should order the documents disclosed without the redaction of names and titles. The public has a vital interest in learning the details of the investigation into Mr. Swartz's conduct, so as to assess the prosecutorial conduct in the case and the propriety of the charges brought against Mr. Swartz. *See Wecht,* 484 F.3d at 210 ("[T]he process by which the government investigates and prosecutes its citizens is an important matter of public concern."). This interest is not merely speculative; there is no dispute that broad-based press interest in the case continues to this day, with new articles published about Mr. Swartz's case on a daily basis. It is equally clear that the press interest involves matters of public, not just personal, concern—the propriety of the prosecution and the proper scope of criminal statutes like the CFAA.

Moreover, to the extent that any of the discovery materials have been cited as evidence in the parties' briefing on the motions to suppress and dismiss, those discovery materials are now a part of the judicial record. There is a strong presumption of public access to such judicial records. *United States v. Salemme*, 985 F. Supp. 193, 195 (D. Mass. 1997) (noting that "public monitoring of the courts is an essential feature of democratic control and accountability"); *Wecht*, 484 F.3d at 209 ("[D]ocuments filed with the court are generally subject to the common law right of access, unless attached to a discovery motion."). These documents therefore can only remain protected from disclosure if the public interest in access is outweighed by legitimate countervailing considerations, such as prejudicial pretrial publicity, the danger of impairing law enforcement or judicial efficiency, or the privacy interests of third parties. *Id.* Because this case is closed and the investigation complete, no concerns about pretrial publicity, law enforcement, or judicial efficiency apply. For the reasons laid out above, the privacy interests of the individuals named in the documents have been greatly overstated by the Government. Accordingly, at the very least, the public should be granted access to those emails already cited in documents filed before the Court.

## IV. CONCLUSION

The public has an important and clearly established interest in receiving the information necessary to understand the events that led to Aaron Swartz's arrest and indictment. With the limited exceptions and redactions summarized above, defense counsel therefore requests that the Court modify the Protective Order to allow disclosure of the discovery documents to Congress and to the public generally.

Dated:  March 15, 2013

Respectfully submitted,

*/s/ Elliot R. Peters*
Elliot R. Peters (admitted *pro hac vice*)
Daniel Purcell (admitted *pro hac vice*)
Keker & Van Nest LLP
633 Battery Street
San Francisco, CA  94111
Tel.: (415) 391-5400
Fax: (415) 397-7188
Email: epeters@kvn.com
dpurcell@kvn.com

Michael J. Pineault
Clements & Pineault, LLP
24 Federal Street
Boston, MA  02110
Tel.:  (857) 445-0135
Fax:  (857) 366-5404
Email: mpineault@clementspineault.com

Attorneys for Defendant AARON SWARTZ

11

732688.03

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF), that paper copies will be sent to those indicated as non-registered participants, and that copies simultaneously will be served by overnight mail on the following attorneys:

Jack W. Pirozzolo
First Assistant United States Attorney
District of Massachusetts
John Joseph Moakley Federal Courthouse
One Courthouse Way
Boston, MA 02210

Jonathan Kotlier
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA  02210-2604
(Counsel for MIT)

Jeremy Feigelson
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
(Counsel for JSTOR)

/s/ *Elliot R. Peters*
Elliot R. Peters