## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

|
UNITED STATES OF AMERICA | |
| |
v. | CRIMINAL No. 11-CR-10260-NMG
| |
AARON SWARTZ, | |
| |
Defendant | |
_____|

## RESPONSE OF THE UNITED STATES TO THE
## MOTION TO MODIFY PROTECTIVE ORDER

The United States hereby responds to the Motion to Modify the Protective Order

("Motion") filed by the "estate" of the Defendant Aaron Swartz (the "Estate")[1] on March 15,

2013.  The United States generally agrees that the Protective Order (Dkt. 28) should be modified

to permit disclosure of certain materials to Congress and the public.  As discussed in more detail

below, disclosure of the materials should nevertheless be subject to the redactions the United

States has proposed and with which the movant disagrees.  In addition, the United States requests

that the Court provide those potentially affected by such a disclosure the opportunity to review

and comment upon, and, if necessary, object to, the disclosure of the redacted materials prior to

any release.

### BACKGROUND

On July 14, 2011, a grand jury returned an Indictment against the defendant in this

matter.  On August 12, 2011, pursuant to Rule 16 and Local Rule 116.1(C) and 116.2, the United

States made its automatic disclosures.  In its automatic disclosure letter of August 12, 2011, the

_____

[1] The United States addresses later in this response the question whether the Estate has standing
to obtain the relief sought in the Motion.

United States informed the defendant that it would not make certain discovery materials available until after a protective order was entered.  *See* Declaration of Michael Pineault in Support of the Motion ("Pineault Decl.") at ¶9, Ex. C at p.2 ("we will need to arrange a protective order with you before inspection.").  As the United States set forth in the automatic disclosure letter, the discovery materials it would be providing the defendant contained potentially sensitive, confidential, and proprietary communications, documents and records obtained from victims JSTOR and MIT, including discussions of the victims' computer systems and security measures. [*Id.*].

On November 30, 2011, the United States, Mr. Swartz and his attorney stipulated to, and the magistrate judge entered, the Protective Order.  [*See* Dkt. 28 at 6].  The Protective Order applies to all discovery materials provided by either party.  [Dkt. 28 at ¶1].  The discovery materials include potentially sensitive, confidential and proprietary communications, documents and records obtained from JSTOR and MIT, *inter alia*.  [Dkt. 28 at 1].  The Protective Order limits the use of the materials exchanged "exclusively to litigate this case."  [Dkt. 28 at ¶3].

On January 11, 2013, the defendant committed suicide.   On January 14, 2013, the United States filed a dismissal of this case, and the Court entered an order of dismissal that same day. [Dkt. 105, 106].  On February 7, 2013, estate counsel (Michael J. Pineault) notified the United States of a Congressional request for access to discovery materials and asked the United States whether it would assent to a modification of the Protective Order.  [Declaration of Jack W. Pirozzolo in Support of the United States' Response to the Motion ("Pirozzolo Decl.") ¶2].  The United States and estate counsel then engaged in a series of discussions pursuant to the meet and confer requirements of Local Rule 7.1(A)(2) in order to narrow the areas of disagreement.

During the course of those discussions, the United States and estate counsel were able to reach an agreement on most, but not all, issues related to a possible modification of the protective order.  The United States and estate counsel agreed to the following:

- the Protective Order should be modified to provide the discovery materials, subject to certain limitations, to Congress;

- any modification of the Protective Order should nevertheless not permit disclosure of certain materials, including (a) transcripts of grand jury testimony, (b) materials concerning immunity for grand jury witnesses, (c) a particular set of JSTOR articles, (d) any computer code that was used or intended to be used to download articles from JSTOR, and (e) criminal history information;

- any discovery materials produced to Congress would redact email prefixes, telephone numbers, home addresses, conference call-in numbers, and Social Security numbers;[2]

- the names (and other law enforcement office information from which one might identify the names) of two Assistant United States Attorneys, three members of law enforcement, and one expert witness would not be redacted; and

- the names (and other information from which one might identify the names) of four witnesses would be redacted, unless they consent to the disclosure.

The United States also informed estate counsel that the United States intended to agree to modify the Protective Order to permit disclosure to the public, subject to the same conditions applicable to the disclosure to Congress.  The United States in fact does agree to such a modification.  Estate counsel also agreed to provide counsel for JSTOR and

---

[2] The United States agreed to a more limited set of redactions for two AUSAs, but in the Motion the Estate appears to agree that this material should be redacted for those individuals as well. [*See* Motion at 4].

MIT a copy of any motion to modify the Protective Order so that JSTOR and MIT would have notice and an opportunity to intervene and be heard on the proposed modification. [Pirozzolo Decl. ¶3].

On one issue, the United States and estate counsel were unable to reach agreement, namely, whether the names (and other information from which one might identify the names) of other individuals appearing in the discovery materials should be disclosed without their consent.  The United States informed estate counsel that whatever additional public benefit might exist by disclosing those names was, in this case, outweighed by the risk to those individuals of becoming targets of threats, harassment and abuse.  [Pirozzolo Decl. ¶4].  The United States made clear that, if the individuals were notified and consented to the disclosure of their names, then no redaction would be necessary, but the United States would not agree to disclosure of their names without their consent.  [Pirozzolo Decl. ¶4].  Estate counsel asserted that the disclosure of the names was necessary because one issue he and his client were focused on, along with Congress and the press, was the role and conduct of the "institutional players." [Pirozzolo Decl. ¶4].

During the various conferences, the United States and estate counsel discussed other issues, which, while not matters of particular agreement or disagreement, are potentially material to the Court's consideration of the Motion.  These issues include the following:

- *Estate counsel's client.* On February 21, 2013, the United States asked estate counsel whom he represented in connection with the proposed modification of the protective order.   Initially, estate counsel told the

4

United States that he represented the California-based law firm, Keker &
Van Nest LLP ("Keker"), which had custody of the discovery material and
had received the request from Congress.  On March 1, 2013, estate
counsel informed the United States that he also represented the Estate.
Although the United States and estate counsel briefly discussed the
question of who had standing to file a motion to modify the Protective
Order, they did not discuss that issue in any meaningful detail.  [Pirozzolo
Decl. ¶5].

- *Discovery material discussing security methods and weaknesses.*  The
  Protective Order applies to certain discovery materials that disclosed
  security weaknesses and security methods in the JSTOR and MIT
  networks.  Again, although the United States and estate counsel briefly
  discussed the issue, they did not resolve whether estate counsel would
  press for release of those materials in moving to modify the order.
  [Pirozzolo Decl. ¶6].

- *Review procedures for redactions prior to disclosure.*  Shortly before the
  Estate filed the Motion, the United States briefly discussed with estate
  counsel whether he had a position on the procedure to be used for
  allowing third parties -- JSTOR or MIT, for example -- to review the
  discovery materials should the Court modify the Protective Order to
  permit some discovery materials to be disclosed to Congress and the
  public.  He said that he did not know yet what his position would be on the
  procedure to be followed.  [Pirozzolo Decl. ¶7].

## DISCUSSION

### A.  Relevant Legal Framework

The question of whether the Court should modify the Protective Order is governed, in the

first instance, by Federal Criminal Rule 16(d)(1), which provides, in pertinent part:

At any time, the court may, for good cause, deny, restrict or defer
discovery or inspection, or grant other appropriate relief.

Fed. R. Crim. P. 16(d)(1).  The Court has the discretion, pursuant to Rule 16(d)(1) and its

inherent authority, to approve or modify a protective order.  *See United States v. Bulger*, 283

F.R.D. 46, 53 (D. Mass. 2012).  In assessing whether, and on what terms, to modify a protective

order, the Court must weigh one party's "'need for modification against the other party's need

for protection, and ought to factor in the availability of alternatives to better achieve both sides'

goals.'"  *Id.* at 55 (*quoting Murata Mfg. Co. Ltd. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 180 (N.D. Ill.

2006)).  In striking this balance, the rights of the victims must be given heavy weight.  *See*

*Bulger*, 283 F.R.D. at 55 (*citing United States v. Salemme*, 985 F. Supp. 193, 197 (D. Mass.

1997) ("privacy interests of third parties may weigh heavily in deciding issues of

impoundment")).

        In addition, because the Motion is requesting the disclosure of names (and other

identifying information) appearing in discovery material, the Estate must establish a "special

need" for that information, an especially difficult task.  *See United States v. Kravetz,* 706 F.3d

47, 54-56 (1st Cir. 2013).  Although the Estate correctly notes in its Motion the general rule that

criminal proceedings are presumptively public, it incorrectly seems to assume that the general

rule applies here.  In *Kravetz*, the First Circuit said that no presumptive right to public access

applies to criminal discovery materials.  *See* id., 706 F.3d at 54-55 ("We agree with those courts

that have found that public access has little positive role in the criminal discovery process.").[3]

Instead, disclosure of discovery materials should only be made upon a showing of "special

---

[3] In *Kravetz*, the First Circuit held that no presumptive right of public access attaches to material
obtained pursuant to Rule 17(c) subpoenas or related documents filed in connection with the
underlying criminal prosecution.  *Id.* at 56.  The United States has been informed that MIT
produced material to Keker pursuant to Rule 17(c).  Estate counsel informed the United States
that, in his view, the Protective Order does not apply to the 17(c) material.  [Pirozzolo Decl. ¶8].

need." *Id.* at 56.  "Special need" for these purposes means that the party seeking disclosure must make a "compelling demonstration that disclosure of the [information] is required to meet the ends of justice."  *United States v. Charmer Industries*, 711 F.2d 1164, 1175 (2d Cir. 1983); *see also Kravetz*, 706 F.3d at 56 (citing *Charmer as describing relevant standard*).  Accordingly, in order to justify disclosing the names and identities the Estate must provide, as to each individual affected, a compelling demonstration that disclosure of the individual's name is required to meet the ends of justice.

### B.  The Court Should Accept United States' Proposed Redactions

As noted earlier, the United States and the Estate disagree on whether the names (and other identifying information) should be redacted from the discovery materials before being made available to Congress and the public.  In the United States' view, personal identifying information should be redacted in order to protect the safety and security of the people named in the discovery materials.  The Court should accept the United States' proposed redactions because they strike the appropriate balance between the public interest in access to the information in the materials, on the one hand, and the public interest in protecting the safety and privacy of victims and witnesses, on the other.  Furthermore, the Estate has not, and cannot, demonstrate the "special need" *Kravetz* requires to justify disclosure of the individual names at issue here.

The United States agrees with the Estate that the substance of the discovery materials can and should be made available to Congress and the public.  The redactions the United States has proposed, however, do not materially interfere with Congress' or the public's access to the substance of the information disclosed.  Attached at Tab A is an example of an e-mail supplied by MIT to the United States for purposes of this Response, with the proposed redactions.  As is

evident from the example, the substance of the communication is not altered.  In addition, because only the *prefixes* of the e-mail addresses are redacted, the institutions involved in the communication are identified.  The only piece of information that is missing is the identity of certain speakers and recipients.  That missing piece of information does not in any meaningful way interfere with what the Estate asserts is the "central and stated goal" of the Congressional inquiry: to understand how the investigation and prosecution proceeded, including how the evidence "was gathered and then presented to this Court."  [Motion at 7].  The precise identity of those communicating the information is at most tangentially relevant to that inquiry.

In any event, whatever incremental public interest may exist in having the names and identities appear on the disclosed materials, it is far outweighed by the important interest in protecting people and organizations from retaliation, threats and harassment.  Even before Mr. Swartz's suicide, organizations involved in this case faced threats from hackers operating under the banner Anonymous.  [Pirozzolo Decl.  ¶9, Tab A].  Following Mr. Swartz's suicide, the threats and harassment dramatically intensified.  Hackers attacked the MIT campus computer network multiple times, attacking on January 13, 18 and 28.  [Pirozzolo Decl. ¶10, Tab B].  On February 23, MIT received a hoax call that a gunman was on campus to retaliate against people involved in the suicide of Mr. Swartz and that the gunman's intended target was MIT President L. Raphael Reif, which led to a police response.  [Pirozzolo Decl.  ¶11, Tab C].  Hackers also claiming to be associated with Anonymous attacked the U.S. Sentencing Commission website and claimed to have obtained sensitive government documents that they would release. [Pirozzolo Decl. ¶12, Tab D].

In the weeks since Mr. Swartz's suicide, both United States Attorney Ortiz and her office have received harassing and, at times, threatening communications.  [Pirozzolo Decl. ¶13].  U.S. Attorney Ortiz has also been targeted by protesters at her home.  [Pirozzolo Decl. ¶14, Tab E]. In weighing the question of whether names should be redacted, the Court ought to take into account the personal cost such tactics might have on the private individuals whose names appear in the discovery materials, as well as the impact the arrival of masked individuals may have on their families and neighbors.  It is worth remembering that the people whose names are at issue here did not voluntarily inject themselves into this matter.  Rather, they were drawn in simply because they did their jobs.

AUSA Heymann, the lead prosecutor on the case, has also been personally threatened and harassed.  Shortly after Mr. Swartz's death became public, AUSA Heymann's personal information (including his home address, personal telephone number, and the names of family member and friends) were posted online. [Pirozzolo Decl. ¶15].  His Facebook page was hacked. [Pirozzolo Decl. ¶15].  He also received harassing and threatening communications, both orally and via e-mail.   Here is one example:

> ROFLMAO just saw you were totally dox'd over the weekend by Anonymous.  How does it feel to become an enemy of the state?  FYI, you might want to move out of the country and change your name . . . [Copying on the email personal information of AUSA Heymann].

[Pirozzolo Decl. ¶15].  AUSA Heymann also received a postcard at his home that has, on one side, U.S. Attorney Ortiz's photo and, on the other side, a photo of a guillotine with a disembodied head that appears to be that of MIT's President.  [Pirozzolo Decl. ¶16, Tab F].  Also on the back side of the postcard, in the bottom corner, is a well-known symbol for Anonymous.

9

[Pirozzolo Decl. ¶16, Tab F].  Of far greater concern, however, is the fact that Mr. Heymann's father, Philip, a Professor at Harvard Law School who had absolutely nothing to do with this matter, received a similar postcard earlier this month.  [Pirozzolo Decl. ¶17, Tab G].  This postcard is even more pointed in its message: the disembodied head pictured on the guillotine is Professor Heymann's.  [Pirozzolo Decl. ¶17, Tab G].

The United States does not think it is appropriate to expose other people, particularly those who did not voluntarily inject themselves into this matter, to threats and harassment of this type under the circumstances here.  The risk -- which is both specific and credible -- is simply too great to justify publishing the documents with the individuals' names to Congress and the public.  Indeed, the Estate has recognized and agreed that at least four individuals' names should be redacted from the discovery materials, although it says that those individuals should be treated differently because they are "private citizens who were not actively involved in either the Government's or any institution's investigation into Mr. Swartz's conduct."  [Motion at 4-5].  Yet the other individuals whose names appear in the documents are no less private citizens because they work for either the government or an "institution."  They became involved in this case in response to events not of their creation and because it was part of their jobs.  They should not, as a consequence, forfeit all privacy and face exposure to harassment and threats simply because they were doing their jobs.

While it is true that some individuals' names appearing in the discovery materials do appear in pleadings filed in this matter, that fact also should not change the balance the Court strikes here. When the earlier pleadings were filed, the threats and harassment directed at those associated with the prosecution of the case and their family members had not yet occurred to the

10

degree they are occurring now.  Nor could this risk have been anticipated at the time and

mitigated as it can be now.  We know two simple things.  First, there is now an unrestrained

desire of unidentified individuals and groups to retaliate against people and organizations

associated with the prosecution of Mr. Swartz and their family members.  Second, the more

people's names and their involvement in the events leading up to the arrest of Mr. Swartz is

publicized, the more likely they are to come to the attention of these vindictive individuals and

groups and the more likely they are to be subject to harassment and threats.

Furthermore, the AUSAs, the principal investigators of the matter, and an expert witness

are willing to have their names remain in any discovery materials turned over to Congress and

the public.  To the extent there is additional scrutiny of their roles in this matter, the documents

with their names on them are going to be the most pertinent.  There is simply no need to expose

other people involved in the case to potential harassment and abuse simply because they had

some role in the underlying events or investigation.[4]

The United States recognizes that the redaction of the identities and identifying

information from the discovery materials will, at the margins, add a level of inconvenience for

those who are reviewing the materials.  That level of inconvenience should not tip the balance

here, however.  The risks of harassment and threat are too great.  And the proposed redactions

will, in general terms, permit readers to identify the source or destination of the communications

such that they will be able to make intelligent assessments of the significance of the documents.

---

[4] The Estate also argues that JSTOR and MIT did not rely on the Protective Order when
providing the information to the United States.  That argument should be given little weight here.
JSTOR and MIT largely produced information in response to law enforcement requests and
subpoenas.  They did not, as a result, forfeit their rights to the confidentiality and privacy of the
information. *See Kravetz*, 706 F.3d at 54-56.

In short, the redactions proposed by the United States are reasonable. They strike an appropriate balance between the public's interest in the information, and the individual interests of people whose names appear in the documents.  In any event, the Estate's Motion shows no "special need" for the disclosure of those names, as required by *Kravetz*.  It simply fails to make a "compelling demonstration that disclosure of the [names] is required to meet the ends of justice." *Charmer Industries*, 711 F.2d at 1175.  Accordingly, the Court should accept the redactions the United States has proposed.

### C.  Other Issues

#### 1.  Standing.

While the United States is willing to accommodate the request for disclosure of the discovery materials, the Motion does not appear to be the correct procedural mechanism to modify the Protective Order.  It is by no means clear to the United States that the Estate is the correct legal entity to be filing the Motion.  The case as to Mr. Swartz was dismissed in January 2013, and, so far as the United States can determine, the Protective Order did not create any rights or obligations of Mr. Swartz that would have passed to the Estate.  The Estate does not explain in the Motion how it has standing.  If the Court determines that the Estate does not have standing and denies the Motion on that basis, the United States nevertheless remains willing to assent to a modification of the Protective Order to proceed with disclosure of the information in accordance with and subject to the conditions it has proposed here.

#### 2.  Additional disclosure issues related to the discovery materials.

Although the current focus of the Motion is on whether certain names should be redacted from the discovery materials, the Court may need to address other issues related to the proposed

modification.  First, any modification should not include disclosure of discovery materials, such as those referenced in the Protective Order at ¶2(b), that discuss security weaknesses and security methods in the MIT and JSTOR networks.  Second, there is additional information within the discovery that the United States and estate counsel did not discuss that, if disclosed, may compromise or threaten certain victims' and witness' privacy interest.  This includes, among other things, personal history information, financial information and curriculum vitae information of potential witnesses.  That information, which is in any event not relevant to the stated purpose of the requested modification, should also not be disclosed.  Third, while the United States and estate counsel reached a general consensus on several issues, the precise parameters of certain categories of information to be withheld from production (e.g., the computer code, the criminal history information) were not defined in detail.  The United States has no reason at this time to think that the parties disagree about the parameters, but would like to discuss those matters further with estate counsel so that, to the extent there may be disagreement, the parties can efficiently seek further guidance from the Court.

### 3.  Notice to affected individuals and procedure for redactions.

The United States requests that if the Court is inclined to modify the Protective Order, it also provide a procedure for notifying individuals potentially affected by the order so that (a) if the Court is inclined to have their names and identifying information disclosed, they are given an opportunity to be heard and object, under seal, and (b) if the Court is inclined to redact their names and identifying information, each individual will be given an opportunity to inform the parties that his or her name need not be redacted.  The United States also requests that the Court

provide potentially affected entities and individuals an opportunity to review the redacted

materials proposed to be made public before the materials are disclosed.

### CONCLUSION

For the foregoing reasons, the Court should modify the Protective Order in the manner

specified by the United States and otherwise deny the relief sought by the Motion.


Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By: **/s/Jack W. Pirozzolo**
JACK W. PIROZZOLO
First Assistant U.S. Attorney
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210


### CERTIFICATE OF SERVICE

I, Jack W. Pirozzolo, hereby certify that on March 29, 2013, I served a copy of the
foregoing motion via electronic filing on counsel for the Estate.  I have also separately served via
email a copy of this Response on counsel for JSTOR and MIT.


**/s/ Jack W. Pirozzolo**
Jack W. Pirozzolo


14