# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,       :
                           :
             Plaintiff,     :
                           :
                           :    Crim. No 11-CR-10260-NMG
          v.          :
                           :
AARON SWARTZ,          :
                           :
            Defendant.   :
                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW OF JSTOR IN SUPPORT OF
## ITS MOTION TO INTERVENE AND IN SUPPORT
## <u>OF MODIFICATION OF THE PROTECTIVE ORDER</u>

Dated:  March 29, 2013

Mark W. Pearlstein (BBO # 542064)
MCDERMOTT WILL & EMERY
28 State Street
Boston, MA 02109-1775
617-535-4000
mpearlstein@mwe.com

<u>Of Counsel:</u>

Jeremy Feigelson
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
212-909-6000
jfeigels@debevoise.com

Counsel for Non-Party Ithaka Harbors,
Inc. d/b/a JSTOR

## **Table of Contents**

Page

Facts ................................................................................................................................1

Argument .........................................................................................................................4

**I.**   JSTOR Should Be Allowed To Intervene ...............................................................4

**II.**  The Court Should Lift The Protective Order While Requiring That The Names And
Identifying Details Of JSTOR Employees Be Redacted...........................................4

    **A.**   Privacy and Safety Concerns Support Redaction ............................................4

    **B.**   The Arguments Against Redaction Of Names Lack Merit ...............................6

Conclusion .......................................................................................................................8

i

## TABLE OF AUTHORITIES

CASES

*In re Grand Jury Subpoena*, 662 F.3d 65 (1st Cir. 2011) ............................................................7

*Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775 (1st Cir. 1988) ..............................................4

*Ramirez v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 425 F.3d 67 (1st Cir. 2005) ................6

*United States v. Carmichael*, 342 F. Supp. 2d 1070 (M.D. Al. 2004)............................................4

*United States v. Bulger*, 283 F.R.D. 46 (D. Mass. 2012)................................................................5

*United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013) ....................................................................4

Ithaka Harbors, Inc., the nonprofit organization that operates the JSTOR digital library (referred to here simply as "JSTOR"), submits this memorandum in support of its motion to intervene and in response to the motion of Aaron Swartz's estate to modify the protective order. JSTOR strongly supports lifting the protective order so that the public can have access to documents that may deepen its understanding of this case.  JSTOR differs with the estate only on the extent of redactions.  JSTOR asks the Court to order that the names and identifying details of its employees be redacted.  Since the tragic death of Mr. Swartz, various participants in this matter have been subjected to incidents of hacking, threatening messages and other troubling incidents.  JSTOR itself has received threatening messages.  The redaction of names and identifying details would reduce the risk of harassment and harm to JSTOR and its personnel. Redaction would strike the right balance between the public interest in access to information, on the one hand, and the privacy and safety of JSTOR's employees, on the other.

<u>Facts</u>

JSTOR is a not-for-profit digital library that provides access to scholarly journals, books and primary sources to people around the world.  The library includes more than 1,700 journals that JSTOR has digitized, preserves and makes accessible. Most of the archived content is under copyright and is made available through JSTOR with the permission and cooperation of over 800 scholarly societies, universities, and academic publishers.  People can access the archive content through more than 8,000 higher education, cultural, and government institutions as well as public libraries in 167 countries worldwide.  JSTOR is freely accessible at 741 institutions in 50 developing nations.  Free public access is also available on the Web to more than 500,000 out-of-copyright articles.  Millions of articles from 1,200 journals are also available for free reading

online by anyone who registers with JSTOR.  *See* Declaration of Kevin Guthrie (Mar. 29, 2013) ("Guthrie Decl.") ¶ 2.

This case arises out of events in late 2010 when Mr. Swartz downloaded a significant portion of the JSTOR archive through the facilities of the Massachusetts Institute of Technology ("MIT").  JSTOR negotiated a civil settlement with Mr. Swartz, pursuant to which he turned over the hard drives containing the downloaded materials and certified that he had not distributed or uploaded the materials.  JSTOR then advised the U.S. Attorney's Office for the District of Massachusetts that it had no interest in further proceedings.  Guthrie Decl. ¶ 3.

A grand jury then indicted Mr. Swartz.  Over the course of the investigation and prosecution, JSTOR received a number of grand jury and trial subpoenas, to which it responded as required under law by producing certain JSTOR records.  What JSTOR produced, and what would be publicly released if the pending motion is granted, consists primarily of its internal emails from the time of the downloading events.  Approximately 25 JSTOR employees are identified by name in these documents.  Most of them are employees who play no public role in the organization, and whose only role in the facts of this case was to do their daily jobs, such as to provide technical assistance in response to the downloading.  Even without the inclusion of names, the documents plainly illustrate how JSTOR responded to those events. Guthrie Decl. ¶ 4.

Since Mr. Swartz took his own life on January 11, 2013, this case has become a matter of intense public interest.  There has been widespread coverage in the traditional media, including the front page of The New York Times, as well as a tremendous amount of online commentary. A committee of the U.S. House of Representatives is conducting a review of the prosecution,

2

while MIT is engaged in an internal review.  JSTOR has cooperated with both the House and

MIT inquiries.  Guthrie Decl. ¶ 5.[1]

Much of the recent response to this case has been reasoned and thoughtful, but there has

also been a more threatening aspect.  For example:

- News reports have indicated that hackers paying a form of tribute to Mr. Swartz have attacked the websites of MIT and the U.S. Sentencing Commission.  *See* Carolyn Y. Johnson, *Aaron Swartz's supporters hack MIT site again*, Boston Globe (Jan. 23, 2013), http://www.bostonglobe.com/metro/2013/01/22/mit-website-hacked-again-tribute-cyber-activist-aaron-swartz/ocZbI8K7oZzxS4rHXc8PHM/story.html; Paul Harris, *Anonymous Takes Down US Sentencing Commission Website*, The Guardian (Jan. 26, 2013), http://www.guardian.co.uk/technology/2013/jan/26/anonymous-hacking-takes-down-sentencing-commission-website.

- News reports also have indicated that an individual called MIT and stated (falsely, as it turned out), that a gunman seeking to retaliate for the Swartz case was present on MIT's campus.  Derek J. Anderson, *MIT Says Hoax Motivated By Swartz Death*, Boston Globe (Feb. 28, 2013), http://www.bostonglobe.com/metro/2013/02/27/mit-gunman-hoax-linked-aaron-swartz-suicide-according-top-school-official/SoyhD6fsSrNupHLpfxAC9M/story.html.

- JSTOR is aware of harsh public comments that have been directed at the prosecution team and at MIT, and JSTOR too has been the subject of a number of ominous comments, both in public forums and in private messages.  Guthrie Decl. ¶ 7.[2]  In light of these developments, a number of JSTOR employees have expressed concern about what might happen to them if they were publicly identified as being involved in the facts of the case, even in an entirely innocent way.  This concern is understood and shared by JSTOR management.  Guthrie Decl. ¶ 8.

JSTOR supports lifting the protective order, including as to its own documents, in order

to enable increased public understanding.  This is consistent with JSTOR's scholarly mission and

its wish to encourage reasoned debate about the case.  In light of the extreme reactions to the

---

[1]   JSTOR also plans to release its own documents in redacted form.  Guthrie Decl. ¶ 5.
[2]   For reasons that are likely obvious, JSTOR is not submitting these threatening messages with its public filing in this matter, but is prepared to submit them for in camera review.

3

case in certain quarters, JSTOR simply seeks to have the names and identifying details of its personnel redacted in order to protect their privacy and safety.  Guthrie Decl. ¶ 8.

<u>Argument</u>

## I.     JSTOR Should Be Allowed To Intervene

Both the government and the Swartz estate have advised that they consent to JSTOR's intervention.  Declaration of Jeremy Feigelson (Mar. 29, 2013) ("Feigelson Decl.") ¶ 1. JSTOR's interests here fit well within the principle that a third party may intervene in a criminal matter "to challenge a request for the production of documents on the ground of privilege . . . or to protect other rights implicated by a particular proceeding."  *United States v. Carmichael*, 342 F. Supp. 2d 1070, 1072 (M.D. Al. 2004) (citations omitted).  Although privilege *per se* is not at stake here, the confidential treatment of documents is an analogous issue, while the safety and privacy of JSTOR's employees plainly are "other rights" supporting intervention.  *Id*.  In civil cases, to which this case in its present posture can fairly be analogized, "intervention is *the* procedurally correct course for third-party challenges to protective orders."  *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 783 (1st Cir. 1988) (quotation marks and citations omitted) (emphasis in original).  JSTOR therefore should be allowed to intervene for purposes of being heard on this motion.

## II.    The Court Should Lift The Protective Order While Requiring That The Names And Identifying Details Of JSTOR Employees Be Redacted

### A.     Privacy and Safety Concerns Support Redaction

JSTOR strongly supports lifting the protective order so that all interested persons can have broader access to the record of the case.  JSTOR understands the interest in a broad review of the issues raised by this matter.  JSTOR also agrees that access to the documentary record is likely to promote public understanding.

4

The only point of difference appears to relate to the scope of redactions.  JSTOR favors redacting all names and identifying details of its personnel.  These redactions would help protect the safety and privacy of individuals who have played, and seek, no public role in the case.  As JSTOR understands it, the USAO and MIT take a similar position.  The Swartz estate, in contrast, supports redacting only such details as Social Security numbers or addresses, but favors disclosure of names.  Estate Br. at 4-5.

As a preliminary matter, it should be noted that documents produced pursuant to a pre-trial subpoena duces tecum, as in this case, "are not entitled to a presumption of access" but "access may be obtained only upon a showing of special need." *United States v. Kravetz*, 706 F.3d 47, 53 (1st Cir. 2013).  JSTOR agrees that the public interest in this case supplies the requisite "special need," but there is no legal or factual basis for defining that need to include the names or identifying details of JSTOR personnel.  Rather, lifting of a protective order requires the court "to balance and weigh all of the relevant interests," *United States v. Bulger*, 283 F.R.D. 46, 55 (D. Mass. 2012), and the balance of interests in these circumstances supports redaction of names.  The interests in need of balancing here are the incremental increase in public understanding that would be gained from disclosure of JSTOR personnel's names, on the one hand, and the privacy and security of those individuals, on the other.  *Bulger*, 283 F.R.D. at 55 ("The privacy interests of third parties . . . weigh in the mix of interests to consider . . . .").

The names of individual JSTOR personnel would add little if anything to the public's understanding of this case.  The documents themselves, even without names, clearly indicate the substance of JSTOR's actions in responding to the downloading events.  It would hardly increase public understanding in any material way to know the name of a particular JSTOR employee

who (for example) initially detected one of the downloading events, or prepared a chart summarizing the events, or talked to MIT about the technical response to the events.[3]

In contrast, the supercharged nature of the public debate about this case, including hacking incidents, gun hoaxes and threatening messages, gives JSTOR and its employees legitimate concern for their safety and privacy.  *See Ramirez v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 425 F.3d 67, 73 (1st Cir. 2005) (upholding lower court's issuance of protective order restricting access to identifying information based on "what appears to be a legitimate concern for defendant, *i.e.*, the physicians' fear of reprisal by [plaintiff]") (quotation marks omitted).  The troubling record of hacking incidents and threatening messages following Mr. Swartz's death confirm that JSTOR's concerns about the privacy and safety of its employees is well-founded.  In these circumstances, safety and privacy concerns weigh strongly in favor of redacting the names and identifying details of JSTOR personnel.

### B.      The Arguments Against Redaction Of Names Lack Merit

Three arguments made by the estate warrant a brief response here.  First, there is no merit to the contention that redaction of names would impede the House investigation.  Estate Br. at 7.  The estate obviously does not and cannot speak for the House committee in this regard.  The documents are clear and understandable even with names and identifying details redacted.  Guthrie Decl. ¶ 8.  Moreover, JSTOR is prepared to work with the House committee staff on a case by case basis to address any instances where the committee staff might feel it is important to know a particular name.  Guthrie Decl. ¶ 5.

---

[3]     To the extent there is any doubt about the clarity of the redacted documents, JSTOR would be open to the Court reviewing sample redactions in connection with its consideration of this motion.

Second, it matters little under the circumstances that the protective order was entered after production of some of the documents at issue.  Estate Br. at 7.  While in the estate's view this demonstrates that there could have been no expectation of confidentiality, JSTOR respectfully disagrees.  As a practical matter, it was always JSTOR's expectation that appropriate steps would be taken to protect the privacy and security of its personnel when and if it came time to present the case in a public setting.  Guthrie Decl. ¶ 6.  As a legal matter, all of JSTOR's productions were made either in response to grand jury subpoenas – as to which confidentiality attaches as a matter of law, *see* Fed. R. Crim. P. 6(e)(2); *In re Grand Jury Subpoena*, 662 F.3d 65, 67 (1st Cir. 2011) (using pseudonyms in place of the names of subpoenaed entities in order to "preserve the confidentiality of grand jury proceedings" established by Rule 6(e))  – or in response to a trial subpoena after the protective order was entered, with the productions designated as being subject to the order.  Feigelson Decl. ¶ 2.  Moreover, the intensity of the recent response to Mr. Swartz's suicide has given rise to a fresh and legitimate concern for the privacy and security of JSTOR's personnel that was not present at the time of the document productions.  This concern surely outweighs any formalistic arguments about the timing of the productions relative to the timing of the entry of the protective order.

Third, it likewise matters little that the name of one JSTOR employee involved in the facts surrounding this case has previously appeared in certain documents filed on the public docket.  Estate Br. at 8.  JSTOR was concerned about this individual's name being disclosed at the time those documents were filed, and it is even more concerned today given the increased threat level that now surrounds the participants in the case.  Guthrie Decl. ¶¶ 7-8.  The appropriate course under the circumstances would be not to heighten and extend the risk

7

associated with disclosure of names, but to limit future risk by ensuring there is no additional release of names.

## **Conclusion**

For the foregoing reasons, the protective order in this matter should be lifted with the proviso that all names and other identifying details of JSTOR personnel should be redacted in all instances where they appear.

Dated: March 29, 2013                           Respectfully submitted,


                                                 /s/ Mark W. Pearlstein
                                                  By: Mark W. Pearlstein (BBO # 542064)

                                                 MCDERMOTT WILL & EMERY
                                                 28 State Street
Of Counsel:                                      Boston, MA 02109-1775
                                                 617-535-4000
Jeremy Feigelson                                 mpearlstein@mwe.com
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000
jfeigels@debevoise.com


8

## <u>CERTIFICATION</u>

Jeremy Feigelson, counsel for JSTOR, certifies, pursuant to Local Rule 7.1(A)(2), that on March 21, 2013, he conferred in good faith with Michael J. Pineault,  Esq., counsel for the Estate of Aaron Swartz, and was unable to resolve the pending motion.


<u>/s/ Jeremy Feigelson</u>
Jeremy Feigelson

9

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 29, 2013, and paper copies will be sent to those indicated as non-registered participants below on March 29, 2013.

Dated: March 29, 2013                    /s/ Mark W. Pearlstein
                                         Mark W. Pearlstein (BBO #542064)


### NON-REGISTERED PARTICIPANT

Massachusetts Institute of Technology:      Jonathan Kotlier
                                            NUTTER MCLENNAN & FISH LLP
                                            World Trade Center West
                                            155 Seaport Boulevard
                                            Boston, MA 02210